Joseph S. KANE

v.

**UNION OF SOVIET SOCIALIST REPUB-LICS, Amtorg Trading Corporation, Haenn Ship Ceiling and Refitting Corporation and Black Sea State Steamship Line.**

No. 499 of 1949.

United States District Court
E. D. Pennsylvania.

April 14, 1967

Martin J. Vigderman, Philadelphia, Pa., for libellant.

A. Harry Levitan, Philadelphia, Pa., Michael B. Standard, of Rabinowitz & Boudin, New York City, for Black Sea State Steamship Line.

IN ADMIRALTY
OPINION

GANEY, Circuit Judge.*

This matter is before the Court on a motion by Black Sea State Steamship Line to set aside, among other matters, service of process upon it through Moore-McCormack Lines, Inc., in a suit brought by a longshoreman for serious and permanently disabling injuries sustained by him aboard the S. S. Mikhail Kutuzov while it was in the Port of Philadelphia. From information obtain-

---

* Specially designated to sit in the District Court.

ed from the whole record in this suit, this Court makes the following

FINDINGS OF FACT:

1. On January 4, 1946, the S. S. Mikhail Kutuzov, owned by respondent, Union of Soviet Socialist Republics ("U.S.S.R."), and operated by respondent, Black Sea State Steamship Line ("Black Sea"), was in the Port of Philadelphia upon its regular business. The husbanding services for the vessel during its stay here were performed by Moore-McCormack Lines, Inc ("Mormack"). The latter was engaged in the business of providing necessary services for the handling of vessels while they were in port.

2. On the above date, libellant, Joseph S. Kane, a resident of Philadelphia, while performing his duties as a longshoreman aboard the S. S. Mikhail Kutuzov, sustained serious and permanent injuries.

3. In 1946, nine economic organizations, including Black Sea, organized under the laws of the U.S.S.R., as owners and charterers of vessels, "all acting through AMTORG TRADING CORPORATION, as agent," entered into a Ship's Agency Agreement, effective October 1, 1946, with Mor-mack. Under the Agreement, Mor-mack agreed to do the following in accordance with special instructions issued by the nine owners or their representatives:

(a) Attend all vessels of the owners in United States ports and furnish all port services for such vessels;

(b) Attend to the formalities required by law in connection with the arrival and departure of vessels;

(c) Notify the master of damage to cargo, and arrange for a survey in case of damage: (In this regard Mor-mack is held responsible for all losses due to its failure to inspect the cargo and arrange for a survey.);

(d) Transship through cargo, warehouse cargo, collect freight and charges, and hold unclaimed and unpaid cargo for the account of owners;

(e) Cooperate with the general average adjuster and take all necessary steps to protect the interest of the vessel involved in cases of collision, salvage, etc.;

(f) Issue receipts to the master for cargo discharged;

(g) Prepare bills of lading and manifests for cargo loaded;

(h) Perform terminal operations, and be responsible for loss and damage to vessel and cargo by reason of its negligence;

(i) Provide terminal facilities;

(j) Obtain dunnage when necessary and keep account of all dunnage purchased and permit it to be inspected by the owner's representatives;

(k) Provide the owners with daily reports concerning movement of imported cargo;

(l) Perform unusual services when necessary at the written request of the owners; and

(m) Take all necessary steps to protect the interest of the vessel in connection with all claims that may be made against the vessels. "The settlement of claims, retaining of counsel, presentation of guarantees, and other actions which may make Owners and/or vessels liable, shall be done upon the express written approval of Owners' representatives, * * *."

4. The Agreement provides for arbitration of disputes that may arise between the parties, and a procedure for determining the payability of any bill not acceptable to Amtorg Trading Corporation.

5. The Agreement is to continue for an indefinite period, with the right of any of the parties to cancel it upon giving sixty days registered notice to the other side. The Agreement has never been canceled. Mor-mack has been operating its business in this District and is able to perform all services on behalf of Black Sea as set forth in the Agreement.

6. Three signatures appear at the end of the Agreement. One of them is

on behalf of Mor-mack, the other two are for Amtorg Trading Corporation, as agent for the owners.

7. On November 30, 1949, libellant filed a libel against respondents, U.S.S.R. Amtorg Trading Corporation ("Amtorg"), a commercial representative of the U.S.S.R. in the United States, and Haenn Ship Ceiling and Refitting Corporation ("Haenn"), a Philadelphia concern which performed refitting work aboard the S. S. Mikhail Kutuzov when it was in the Port of Philadelphia in January of 1946. The libel sought damages for the injuries sustained by libellant on January 4, 1946, allegedly as the result of the unseaworthiness of the vessel and the negligence of the operators of the vessel while he, as an employee of Mor-mack, was performing his duties as a longshoreman during the loading operation.

8. Service of process on U.S.S.R. and Amtorg was made by a deputy United States Marshal of this District on December 14, 1949, by handing two citations and two copies of the libel to the head of the Claims Department of Mor-mack in the Bourse Building, Philadelphia, where Mor-mack maintains an office.

9. Copies of the libel were forwarded to Amtorg in New York City by Mor-mack. Since Amtorg is the agent of the U. S. S. R. and Black Sea, its knowledge of the filing of the libel is imputed to U.S.S.R. and Black Sea.

10. On December 27, 1949, Haenn filed peremptory exceptions to the libel on the ground of laches, which were sustained, and the libel dismissed as to it.[1]

11. On February 15, 1950, Amtorg filed exceptions to the libel on the grounds of improper service of process, and that it neither owned, managed nor controlled the vessel in question. On April 24, 1951, the exceptions were sustained, and the libel dismissed as to it.

Libellant did not appeal from this decree. Amtorg was represented by William L. Standard and Louis R. Harolds, Esquires, of New York City. William L. Standard, Esquire, presently represents Black Sea in this suit.

12. On May 31, 1950, this Court declared U.S.S.R. in default and that the libel be taken *pro confesso* against that respondent, and that the suit proceed against it ex parte for the ascertainment of damages.

13. On February 21, 1952, the libel was amended to add Black Sea as a party respondent.

14. Seven days later, on February 28, 1952, a deputy United States Marshal appeared at the office of Mor-mack in the Bourse Building, Philadelphia, and deposited a citation and a copy of the amended libel with the person in charge as agent in this District for Black Sea.

15. On the above date, no vessel owned or under the control of Black Sea was within this District nor had any such vessel been within this District at any time in the preceding two years and eight months. Black Sea had no office or telephone here, nor was there present any of the indicia of its doing business in this District.

16. In the period January 1, 1946 to October of 1966, at least, only four vessels under the control of Black Sea had been within this District, i. e., the S. S. Mikhail Kutuzov on January 4, 1946 (the date of libellant's injury) and November 3, 1947; the S. S. Mikhail Fruze on November 10, 1947; the S. S. Krasnodar on January 27, 1949, and July 5, 1949; and the S. S. General Cherniakhovsky on March 14, 1949.

17. Prior to June 13, 1966, no appearance was made by Black Sea in this suit. On March 31, 1952, libellant presented a motion to this Court for a decree adjudging Black Sea in default and that

<hr/>

1. The exceptions were sustained on March 27, 1950. D.C., 89 F.Supp. 435. A unanimous Court of Appeals, sitting en banc, affirmed the decree. 189 F.2d 303, 307. Application for rehearing was denied, and thereafter libellant's petition for writ of certiorari was denied by the Supreme Court. 342 U.S. 903, 72 S.Ct. 292, 96 L.Ed. 676.

the suit proceed for the assessment of damages. This Court instructed libellant that before it would take any action on the motion, notice of the hearing should be given to Black Sea.

18. On the same day, proctor for libellant notified Mor-mack that libellant would move for a default decree on April 7, 1952, before this Court. Mormack wrote libellant's proctor in response to the notice and informed him that the matter had been referred to Amtorg.

19. On September 25, 1952, proctor for libellant appeared at the hearing on the motion list. Although Black Sea had sufficient notice of the motion for default, no one appeared on its behalf. The following day this Court signed a decree adjudging Black Sea in default, that the amended libel be taken *pro confesso* against it, and that the suit proceed ex parte for the ascertainment of damages.

20. On October 7, 1952, the matter came on for trial before this Court upon the issue of damages against U.S.S.R. and Black Sea. No one appeared of record at the trial for the respondents. The trial proceeded to conclusion in their absence.

21. On February 4, 1960, this Court made its findings and conclusions, that libellant's injuries are permanent and will disable him from performing heavy work in the future, and executed a final decree in favor of libellant and against the U.S.S.R. and Black Sea in the amount of $49,231.92.

22. On February 15, 1960, proctor for libellant wrote letters to Black Sea in care of Amtorg in New York, and to the Embassy of the U.S.S.R. in Washington, D. C., advising of the entry of judgment and asking when payment might be expected. By letter dated February 17, 1960, Amtorg acknowledged said letter and returned it, suggesting that the letter be addressed directly to Black Sea at Odessa, U.S.S.R. There was no response from the Embassy of the U.S.S.R. On February 19, 1960, proctor for libellant wrote a letter to Black Sea in Odes-sa, U.S.S.R., similarly advising of the entry of judgment and asking when payment might be expected. No response was ever received.

23. On February 26, 1960, and March 29, 1960, proctor for libellant wrote to the Secretary of State, Washington, D. C., advising of representation of libellant and of the judgment which had been entered against respondents. Said letters requested the assistance of the Department of State in collecting said judgment. After further correspondence between the proctor for libellant and the Department of State, wherein copies of this Court's findings, conclusions and final decree were sent to the Department of State, by letter dated July 13, 1960, the Department of State advised counsel for libellant that said Department was sending copies of the findings, conclusions and final decree to the American Embassy at Moscow, U.S.S.R., with instructions to transmit them to the Government of the U.S.S.R. and to request information regarding procedure for the collection of the judgment. No response was received from U.S.S.R. or from Black Sea or any representative.

24. On June 13, 1966, Black Sea filed the motion, now before this Court for disposition, to set aside the following:

(a) Service of process upon it on the grounds that it "had no contact with the District at the time of service of process to render it subject to this Court's jurisdiction and that Moore-McCormack, Inc. was not respondent's agent for service of process within FRCP 4(d) (3), (7) or Rule 2180 of the Pennsylvania Rules of Civil Procedure.";

(b) Decree of this Court amending the libel to name Black Sea as a party;

(c) Decree of this Court adjudging Black Sea in default; and

(d) Findings of Fact and Conclusions of Law and the final decree made pursuant to them.

Attached to the motion were two affidavits, one by an employee of Amtorg and the other by an employee of Mormack.

25. Libellant has filed an "answer" to the motion to set aside, under oath of his proctor in admiralty who handled the matter from its inception, denying and controverting substantially the allegations of the affidavits filed on behalf of Black Sea, and averring additional facts.

This Court, to afford Black Sea a last chance, instructed libellant that, before the default motion be heard, additional notice be given to it to remove any doubt that it is aware of the situation. In response to such instruction, libellant's proctor wrote to Mor-mack advising it that libellant would move for a default decree on April 7, 1952, enclosing a copy of the proposed motion, and inquired whether anyone would appear to oppose the motion. Mor-mack wrote on April 3, that the letter had been referred to Amtorg.

26. The provision of paragraph 1(e) of the Agreement requiring Mor-mack to "take all necessary steps to protect the interest of the vessel in connection * * * with all claims that may be made against the vessel." is broad enough to authorize Mor-mack to accept service of process on behalf of Black Sea for asserted causes of action which arose out of transactions, occurrences or events which took place upon a vessel operated by Black Sea while that vessel was in this District and subject to the terms of the Agreement.

27. At the time of service of process of Black Sea through Mor-mack, Black Sea had such contacts within this District that the maintenance of this suit against it here does not offend the traditional notions of fair play and substantial justice with regard to Black Sea, and satisfies the requirements of due process of law and personal jurisdiction. See International Shoe Co. v. State of Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); McGee v. International Life Insurance Co., 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). Also see Gkiafis v. S. S. Yiosinas, 4 Cir. 1965, 342 F.2d 546 (Opinion by Chief Judge Sobeloff).

## CONCLUSIONS OF LAW

1. This Court has admiralty jurisdiction over the subject matter of this suit.

 2. Mor-mack was the agent of Black Sea for the purpose of accepting service of process on its behalf at the time a deputy United States Marshal served a citation and a copy of the amended libel upon Mor-mack on February 28, 1952.

3. Service of process upon Mor-mack at that time was a valid service upon Black Sea.

4. This Court has *in personam* jurisdiction over Black Sea for purposes of this suit.

Black Sea's motion, filed June 13, 1966, will be dismissed.